UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
CARITINO CANDIA, *individually and on behalf of others similarly situated*,

                       Plaintiff,

                -against-

MIDDLE KINGDOM INC., d/b/a LONG SPRING GARDEN and JAMES CHAU,

                      Defendants.
---------------------------------------------------------------- x

**REPORT AND RECOMMENDATION**

15-CV-1710 (AMD)(PK)

**Peggy Kuo, United States Magistrate Judge:**

      Plaintiff Caritino Candia brought this action against Defendants Middle Kingdom, Inc. (d/b/a Long Spring Garden) ("Middle Kingdom"), and James Chau, alleging violations of the unpaid overtime and minimum wages provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") §§ 190 and 650 *et seq.*, as well as the spread-of-hours and wage notice and statement requirements of the NYLL. (*See* Second Amended Complaint ("SAC"), Dkt. 33.)

      Before this Court on referral from the Honorable Ann M. Donnelly is Plaintiff's Motion for Default Judgment (the "Motion"). (*See* November 23, 2016 Order.) For the reasons stated herein, the undersigned respectfully recommends that the Motion for Default Judgment be granted in part.

## BACKGROUND

      The following facts are taken from the Second Amended Complaint except where otherwise indicated. Defendant Middle Kingdom is a corporate entity that does business as the restaurant Long Spring Garden, located at 62-05 Roosevelt Avenue in Woodside, New York. (SAC ¶¶ 1-3, 23.) Defendant James Chau is the "owner, manager, principal and/or agent" of Middle Kingdom. (*Id.* ¶¶ 3, 24-25.) He "possessed operational control" over Middle Kingdom, setting employee wages and schedules, maintaining employee records, and holding hiring and firing authority. (*Id.* ¶¶ 25- 26.)

1

Plaintiff alleges that Defendants are joint employers that "act in the interest of each other with respect to employees . . . and share control over the employees," or in the alternative, that function as a single employer. (*Id.* ¶¶ 29, 31-32.)

Plaintiff worked at Long Spring Garden from 2008 to February 24, 2015. (*Id.* ¶¶ 1, 20, 22.) He was hired as a delivery worker, but spent most of his work days in the restaurant. (*Id.* ¶¶ 5, 9.) His duties included "cooking rice, preparing and cooking barbecue chicken, cutting vegetables, cleaning the basement and cleaning the refrigerators." (*Id.* ¶ 5.) He spent "greater or equal time" on these duties as he did on deliveries. (*Id.* ¶ 9.)

Plaintiff regularly worked 74 hours per week—10:00 a.m. to 10:00 p.m. Monday through Thursday, 10:00 a.m. to 11:00 p.m. Friday and Saturday—with no breaks. (*Id.* ¶¶ 48, 53.) He was paid a fixed weekly salary of $450 in cash, regardless of the exact number of hours he worked, even when he was required to work several hours past his usual departure time. (*Id.* ¶¶ 50-52.) The fixed salary did not include any spread-of-hours pay. (*Id.* ¶ 8.) Defendants did not have a system to keep track of the actual number of hours worked by employees, "such as punch cards or sign in sheets," and Plaintiff was not required to keep track of his time. (*Id.* ¶ 57.)

Plaintiff was not provided with a wage notice or statement in English or Spanish, his native language. (*Id.* ¶ 58.) Defendants did not notify him of FLSA or NYLL requirements regarding minimum or overtime wages. (*Id.* ¶ 59.) In addition, they required Plaintiff to buy, with his own funds, a bicycle for use in his employment. (*Id.* ¶ 60.) Plaintiff was also paid at a lower, tip-credited rate despite primarily performing non-tipped duties. (*Id.* ¶¶ 10-11.) Defendants did not inform Plaintiff that his rate of pay was tip-credited. (*Id.* ¶¶ 54-55; Candia Declaration ("Candia Decl.") ¶ 14, Dkt. 45.) Plaintiff alleges that Defendants engaged in a "policy and practice of disguising [his] actual duties in payroll records to avoid paying [him] at the minimum wage rate." (SAC ¶ 12.)

Plaintiff initiated this action on March 31, 2015. (*See* Dkt. 1.) Soon after, he voluntarily dismissed several defendants named in the Complaint, as "the action was brought against the incorrect corporation" and Plaintiff "had misspelled one of the individual defendant's names." (*See* May 26, 2015 Status Report, Dkt. 9; Notice of Voluntary Dismissal, Dkt. 8.) The Court granted Plaintiff leave to file an Amended Complaint against additional defendants, which he filed on June 12, 2015. (*See* May 26, 2015 Order; Amended Complaint, Dkt. 10.) The Amended Complaint named Eric Chau, James Chau, James Tsao and corporate entities "Chang Chun Garden Corp. (d/b/a/ Long Spring Garden)" and "Chang Chun Garden Inc. (d/b/a Long Spring Garden)" as defendants. (*Id.*) Subsequently, Plaintiff agreed to discontinue the claims against Eric Chau and the named corporate defendants, and was granted leave to file a second amended complaint against James Chau and Middle Kingdom. (*See* March 1, 2016 Mins.)

 Plaintiff filed the Second Amended Complaint on March 8, 2016. (*See* SAC.) He served the Second Amended Complaint on Defendant Middle Kingdom on March 14, 2016 via the New York Secretary of State. (Dkt. 35.) He served Defendant Chau on March 31, 2016 via personal delivery to a person of suitable age and discretion at his residence, followed by mailing thereto. (Dkt. 36.) After the time to respond to the Second Amended Complaint expired, Plaintiff requested Certificates of Default pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. 38.) The Clerk of Court entered the Certificates of Default on May 16, 2016. (Dkts. 40, 41.) Plaintiff moved for default judgment on June 9, 2016, and mailed the Motion papers to Defendants. (Dkts. 43, 48, 48-2.)

## DISCUSSION

I.     Default Judgment

In order to grant a default judgment, the Court must ensure that Plaintiff took all required steps in moving for default judgment, including providing proper notice to Defendants of the

3

lawsuit. Local Civ. R. 55.2(c). Service on both Defendants was proper under federal and New York law. *See* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1); *see also* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). Certificates of Default were requested and entered, and Plaintiff complied with Local Rule 55.2(c) by mailing the Default Judgment Motion papers to Defendants.

Although a "default judgment is ordinarily justified where a defendant fails to respond to the complaint," the Court must nevertheless determine whether the allegations establish liability as a matter of law. *SEC v. Anticevic*, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov 30, 2009); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Trs. Of the Plumbers Local Union No. 1 Welfare Fund. v. Philip Gen. Constr.*, No. 05-CV-1665 (NG)(RML), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007). In evaluating a plaintiff's allegations, the Court accepts as true the well-pleaded allegations of the Complaint as to liability, drawing all reasonable inferences in favor of Plaintiff. *See Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Even though "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Id.* On a motion for default judgment, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Gunawan v. Sushi Sake Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). When a plaintiff claims FLSA and NYLL

4

violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Id.*

## II.   Liability

### A. *Employment Relationship Under the FLSA*

To establish a claim under the FLSA, a plaintiff must prove first that: (1) plaintiff is an "employee" within the meaning of the FLSA; (2) defendant is an "employer" subject to the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See* 29 U.S.C. §§ 203, 213; *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA)(CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017). Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA describes an employer as "any [person or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). It does not define the term "'employer' in the first instance." *Irizarry v Ctsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013).

Plaintiff alleges that he was employed by Defendants to work in a restaurant that Defendants owned and operated, thereby engaging in commerce. (SAC ¶¶ 22, 38, 41; Candia Decl. ¶¶ 3-6.) He also alleges that Defendants exercised substantial control over his working conditions. (SAC ¶ 30.) Accepting these allegations as true, Plaintiff falls within the FLSA's definition of "employee."

A defendant is an FLSA employer if it meets the criteria for either individual coverage or enterprise coverage. *See Saucedo*, 2016 WL 8376837, at *4. Plaintiff's allegations focus on the latter test, which considers whether the employer "has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on

5

goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Plaintiff alleges that Defendants "directly engaged in interstate commerce" through the restaurant's sale of "numerous items . . . such as meats and vegetables . . . produced outside of the State of New York," and had the requisite gross annual volume of sales. (SAC ¶¶ 36, 38.) In addition, Plaintiff "helped the cashier count the restaurant's income for the last four months of his employment and observed that the restaurant made approximately $2,000.00 every day." (SAC ¶ 37.) These allegations are sufficient to establish Middle Kingdom's employer status under the enterprise coverage test for the purposes of this default judgment motion. *See Fermin*, 93 F.Supp.3d at 33.

An employer who "exercises operational control over the employee in question" may be liable under the FLSA. *See Irizarry,* 722 F.3d at 110; 29 U.S.C. § 203(d). Courts in the Second Circuit assess operational control by applying the "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The economic reality test looks at "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *see also Herman v RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (explaining that no single *Carter* factor alone is dispositive, as the test encompasses the totality of the circumstances). The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d

6

300, 306 (E.D.N.Y. 2006)) (internal quotes omitted). Accepting as true the well-pleaded allegations of Plaintiff, Defendant Chau was owner of Middle Kingdom and "determined the wages and compensation of the employees of Defendants, including Plaintiff [ ], established the schedules of the employees, maintained employee records and had the authority to hire and fire employees." (SAC ¶ 26.) Therefore, Plaintiff has established that his employment relationship with Defendants meets the economic reality test.

Finally, Plaintiff must show that he is not exempt from the FLSA's protections, an analysis that requires more than a recitation of the statutory elements in the Complaint. *Fermin*, 93 F.Supp.3d at 32 (citations omitted). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). The FLSA "contains a litany of exemptions" but they do not include functions such as "waiter, kitchen helper/food preparer, cook and dishwasher." *Fermin*, 93 F.Supp.3d at 32 (citation omitted). Although Plaintiff was hired in a delivery role, he also performed duties such as cooking, kitchen preparation and cleaning. (SAC ¶¶ 5, 43-44, 64; Candia Decl. ¶ 6.) These duties do not put Plaintiff in an exempted category such as "executive employee", "creative professional" or "learned professional." *Fermin*, 93 F.Supp.3d at 32 (citation omitted). Therefore, Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

B. *Employment Relationship Under the NYLL*

In order to make out a claim under the NYLL, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment." N.Y. Lab. L. § 190. The NYLL broadly defines an employee as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5). An employer is any individual or corporation "acting as employer." N.Y. Lab. L. § 651(6).

Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *See Saucedo*, 2016 WL 8376837, at *6. The FLSA's definition of "employer" is "nearly identical" to that of the NYLL, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Since Defendants are employers under the FLSA, they are also employers under the NYLL.

Plaintiff has shown that the NYLL applies.

*C. Statute of Limitations*

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). Plaintiff filed his Complaint on March 31, 2015. (Dkt. 1.) The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff was specifically named in the Complaint, thus he may recover for FLSA violations that occurred on or after March 31, 2012.

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff may recover for NYLL violations that occurred on or after March 31, 2009.

8

*D. Plaintiff's Claims and Damages*

Plaintiff seeks compensation for unpaid minimum wage, overtime, spread-of-hours premiums, and equipment costs. He also requests statutory damages for wage notice and statement violations, liquidated damages, and pre-judgment interest. He submitted affidavits and damages calculations in support of the Motion. (*See* Dkt. 43.) Because Defendant Chau is an owner of Defendant Middle Kingdom, Defendants are jointly and severally liable for any violations under the FLSA and NYLL. *See Mahoney*, 2016 WL 6585810, at *9.

1. <u>Minimum Wage Violations</u>

Plaintiff alleges that Defendants failed to pay minimum wage under the FLSA and NYLL. (SAC ¶¶ 83-84, 95-97.) An employer who fails to meet its minimum wage obligation is liable to affected employees under both statutes. *See* 29 U.S.C. § 216(b); N.Y. Comp. Codes R. & Regs. tit. 12 § 143-1.3. Under the FLSA, an "employee who sues for unpaid minimum wages or overtime compensation has the burden of proving that the employer did not compensate him for completed work." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). When precise records of evidence do not exist, the plaintiff's recollection and estimates of hours worked meet this burden of proof. *See id.* at 687-88; *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("a plaintiff's affidavit that states the number of hours worked is sufficient" to meet burden of proof).

Plaintiff claims that he was paid $450 each week during the course of his employment with Defendants. (Candia Decl. ¶ 13.) Under the FLSA "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012). The presumption is rebutted where "the contracting parties intend and understand the

9

weekly salary to include overtime hours at the premium rate." *Id.* Because the presumption is not rebutted here (*see* Pl. Mem. at 4), Plaintiff's hourly rate comes out to $11.25.

The minimum wage rate under the FLSA was $6.55 an hour from July 24, 2008 to July 24, 2009, when it increased to $7.25 per hour. *See* 29 U.S.C. § 206(1). Plaintiff primarily performed non-tipped duties, even on days that he performed some tipped duties (SAC ¶¶ 5, 43-44, 64), therefore qualifying him as a non-tipped employee under the NYLL. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.9(a) (no tip credit applies when service employee works at a non-tipped occupation "for two hours or more"). The New York minimum wage rates for non-tipped employees during the relevant time were $7.15 per hour after January 1, 2007; $8.00 per hour after December 31, 2013; and $8.75 per hour after December 31, 2014. N.Y. Lab. L. § 652(1).

Because the effective hourly rate paid to Plaintiff at all times was $11.25, Plaintiff has not shown a minimum wage violation.

### 2. Overtime Compensation

Plaintiff also seeks to recover unpaid overtime compensation. Under the FLSA and NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL). In the Second Circuit, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy v. Catholic Heath Sys. Of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), providing "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he "worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F.Supp.3d at 44-45 (allegations that plaintiff worked over forty hours a week established an overtime claim). Plaintiff alleges that he worked 74

10

hours each week, *i.e.* 34 hours of overtime, from March 2009 to February 24, 2015. (SAC ¶ 48; Pl. Mem. at 4.) He describes his hours and duties consistently and in sufficient detail. (SAC ¶¶ 5, 44; Candia Decl. ¶¶ 6, 10, 13, 15-16.)

Defendants are liable to Plaintiff for overtime compensation that is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ)(RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016). As discussed above, Plaintiff's regular rate of pay was $11.25, which is higher than the minimum wage. Plaintiff was thus entitled to an overtime rate of $16.88 per hour throughout his employment, but was paid no overtime. Although Plaintiff states that he worked from "approximately 2008" onward, the statute of limitations bars claims that arose before March 31, 2009. Thus, Plaintiff can recover for unpaid overtime from March 31, 2009 to February 24, 2015, a period of 308 weeks. Plaintiff worked overtime 34 hours per week for 308 weeks.

Accordingly, the undersigned finds that the **total overtime pay owed to Plaintiff is $176,767.36.**

### 3. Spread-of-Hours Violations

Under the NYLL, a restaurant employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a); *Saucedo*, 2016 WL 8376837, at *12. Plaintiff alleges that Defendants failed to pay him spread-of-hours pay even though he worked from 10:00 a.m. to 10:00 p.m. Mondays through Thursdays (12 hours total) and from 10:00 a.m. to 11:00 p.m. on Fridays and Saturdays (13 hours total). (Candia Decl. ¶ 10.) Defendants are liable to Plaintiff for violation of the spread-of-hours requirements.

The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total amount of days that the employee worked more than ten hours. Employees are to be compensated at the applicable minimum wage "regardless of [their] regular rate of pay." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(d). Plaintiff worked more than ten hours a day 6 days a week from March 31, 2009 to February 24, 2015. (Candia Decl. ¶ 10; Pl. Mem. at 6.) From March 31, 2009 to December 31, 2013, for 1,488 days worked at a minimum hourly wage of $7.15, Plaintiff was entitled to spread-of-hours pay of $10,639.20. From January 1, 2014 to December 31, 2014, for 313 days worked at a minimum hourly wage of $8.00, Plaintiff was entitled to spread-of-hours pay of $2,504.00. From January 1, 2015 to February 24, 2015, for 48 days worked at a minimum hourly wage of $8.75, Plaintiff was entitled to spread-of-hours pay of $420.00.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded a total of **$13,563.20 in unpaid spread-of-hours wages**.

4. <u>Equipment Costs</u>

An employer who requires an employee to provide "tools of the trade which will be used in or are specifically required for the performance of the employer's particular work" violates the FLSA where the "cost of such tools . . . cuts into the minimum or overtime wages required to be paid." 29 C.F.R. § 531.35. Similarly, under the NYLL, "[t]he minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.10(b); *see Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *7 (S.D.N.Y. May 14, 2012) (finding that plaintiffs' wages "were effectively diminished by the cost of the equipment" where plaintiffs purchased bicycles to be used in deliveries). Plaintiff alleges that Defendants required him to purchase a bicycle for $70.00 to be used in the course of his employment, which included delivery duties. (SAC ¶¶ 112-114; Candia Decl. ¶ 21.) The equipment costs thus effectively reduced his wages in violation of the FLSA and NYLL.

The undersigned respectfully recommends the Plaintiff be awarded **$70.00 in equipment costs.**

### 5. Wage Notice and Statement Violations

Plaintiff alleges violations of Section 195(1) and Section 195(3) of the NYLL, the statute's wage notice and wage statement provisions. Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia*, the rate of pay, the basis thereof, and any tip allowance. Violations of Section 195(1) carry damages of $50.00 per work day, for a maximum $5,000.00. N.Y. Lab. L. § 198(1-b). Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. Violations of Section 195(3) carry damages of $250.00 per work day, also for a maximum of $5,000.00. N.Y. Lab. L. § 198(1-d). Defendants failed to provide Plaintiff with the required written notice, in English and his primary language, Spanish, throughout the course of his employment. (SAC ¶¶ 58, 73-75, 107; Pl. Mem. at 7.) Since Defendants violated the wage notice requirement for over 100 work days and the wage statement requirement for over 20 work days after these provisions went into effect in April 2011, the maximum statutory damages are warranted on each claim. *See Qiu Hua Tan v. Voyage Express Inc.,* No. 15-CV-6202 (RJD)(RML), 2017 WL 2334969, at *7 (E.D.N.Y. May 25, 2017) (awarding separate maximum statutory damages for wage notice and wage statement violations).

The undersigned recommends that Defendants be held liable for their failure to comply with the annual wage notice and statement requirements of the NYLL in the **maximum statutory damages of $10,000.00.**

6. <u>Liquidated Damages</u>

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663. If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Defendants failed to respond to the Motion, no good faith exists and liquidated damages are appropriate. *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM)(PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*). In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages pursuant to the NYLL. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citing *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). Although Plaintiff seeks liquidated damages on the minimum wage, overtime, and spread-of-hours claims (*see* Pl. Mem. at 5-6), there is no violation of the first claim. Accordingly, liquidated damages should be awarded to Plaintiff only on his NYLL overtime and spread-of-hours claims.

Before the NYLL was amended on April 9, 2011, Plaintiff was entitled to "an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a) (as effective before April 9, 2011). After the amendment, Plaintiff could recover "one hundred percent of the total amount of wages found to be due." N.Y. Lab. Law

§ 198(1-a). Therefore, for the period from March 31, 2009 to April 8, 2011, Plaintiff is entitled to liquidated damages equal to 25% of unpaid overtime. Plaintiff was owed an overtime rate of $16.88 per hour, for 34 hours a week, for a period of 105 weeks. Liquidated damages totaling 25% of that figure equal $15,065.40. For the period from April 9, 2011 to February 24, 2015, Plaintiff is entitled to liquidated damages equal to 100% of unpaid overtime. Plaintiff was owed an overtime rate of $16.88 per hour, for 34 hours a week, for a period of 202 weeks. Liquidated damages totaling 100% of that figure equal $115,931.84. Plaintiff's total liquidated damages on the overtime claim equal $130,997.24.

Plaintiff's spread-of-hours award from March 31, 2009 to April 8, 2011, for 633 days worked at $7.15 premium per day, is $4,525.95. He is entitled to 25% of this figure in liquidated damages, in the amount of $1,131.49. His spread-of-hours award from April 9, 2011 to December 31, 2013, for 855 days worked at $7.15 premium per day, is $6,113.25, of which he is entitled to 100% in liquidated damages. His award from January 1, 2014 to February 24, 2015, for 313 days worked at $8.00 premium per day and 48 days worked at $8.75 premium per day, is $2,924.00, of which he is entitled to 100% in liquidated damages. Plaintiff's total liquidated damages on the spread-of-hours claim equal $10,168.74.

The undersigned recommends an award of **$141,165.98 in liquidated damages.**

7. <u>Pre-Judgment Interest</u>

Plaintiff seeks prejudgment interest on the spread-of-hours premium. (Pl. Mem. at 7; Clark Declaration ("Clark Decl.") at 4, Dkt. 44.) Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16 (citation omitted). Pursuant to N.Y. C.P.L.R. § 5004, the statutory interest rate for prejudgment interest is nine percent per annum. Courts have discretion in determining a reasonable date from which to award prejudgment interest,

*Montellano-Espana*, 2016 WL 4147143, at *7, and have found that the midway point between when the Plaintiff began and ended work is a reasonable date. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). As discussed above, the period of Plaintiff's employment covered by the statute of limitations is March 31, 2009 to February 24, 2015. The midpoint date is March 13, 2012.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **prejudgment interest at 9% per annum on the spread-of-hours premium ($13,563.20), equal to $6,626.56 from March 13, 2012 to the date of this Report and Recommendation. This amount will increase by $3.34 per day to the date of judgment.**

### E. Attorneys' Fees & Costs

Plaintiff seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1). District courts have broad discretion to determine the amount awarded, and the party requesting fees must provide documentation to support its claims. *Mahoney*, 2016 WL 6585810, at *18. Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *16. This "lodestar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Saucedo*, 2016 WL 8376837, at *16. District courts consider case-specific variables enumerated by the Second Circuit and other courts as relevant in setting a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Assn v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). In determining whether an hourly rate is reasonable, courts consider whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-

16

$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Id.* at *19 (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, 12-CV-5737 (ILG) (JMA), 2014 U.S. Dist. LEXIS 141455, at *18 (E.D.N.Y. Sep. 15, 2014)).

Plaintiff submitted contemporaneous attorney timesheets and a summary of counsel's qualifications. (*See* Costs and Fees, Dkt. 44-2; Clark Decl.) Plaintiff requests an hourly rate of $450 for Michael Faillace and $375 for Shawn Clark. (Clark Decl. at 6-7.) Mr. Faillace is the managing partner of his firm and bills at an hourly rate of $450. (*Id.*) Mr. Clark is a fifth-year associate and bills at a rate of $375 per hour. (*Id.*) In a recent case in this District, the court awarded Mr. Faillace $350 per hour and Mr. Clark $200 per hour. *Quiroz v. Luigis Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 6311868, at *4 (E.D.N.Y. Oct. 28, 2016); *see also Quito v. El Pedragal Rest., Corp.*, No. 16-CV-6634 (BMC), 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding Mr. Faillace $375 per hour); *Lopez v. SGRA Corp.*, No. 14-CV-5225 (SJ) (MDG), 2016 WL 8711350, at *10 (E.D.N.Y. Mar. 31, 2016) (stating that other "courts in this district have noted that the rates requested by Mr. Faillace . . . were excessively high" and awarding Mr. Faillace $375 per hour). The undersigned recommends that Mr. Faillace's rate be reduced to $350 per hour and Mr. Clark's rate to $200 per hour.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Here, contemporaneous time records show a reasonable amount of time expended on each task. Counsel did not bill for administrative tasks or engage in "block billing," and the respective time entries do not overlap or otherwise suggest redundancy. Mr. Faillace billed 13.2 hours and Mr. Clark billed 5.75 hours, which the undersigned finds to be appropriate in this case.

Plaintiff also seeks $625.00 in costs, including $400.00 for the filing fee and $225.00 for service of process fees. Plaintiff has documented the request (*see* Costs and Fees at 2), and is entitled

17

to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ)(JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).

The undersigned recommends an award of **$5,770.00 in attorneys' fees and $625.00 in costs**.

18

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be denied as to the minimum wage claim and granted as to all other claims, and that Plaintiff be awarded damages in the total sum of **$354,588.10** plus pre-judgment interest, comprised of:

(i) **$176,767.36** in unpaid overtime compensation;

(ii) **$13,563.20** in unpaid spread-of-hours premium;

(iii) **$70.00** in equipment costs;

(iv) **$10,000.00** in statutory damages for NYLL wage notice and statement violations;

(v) **$141,165.98** in liquidated damages on the overtime and spread-of-hours violations;

(vi) **$6,626.56** in pre-judgment interest, plus additional accrued interest of $3.34 per day from today to the date of judgment;

(vii) **$5,770.00** in attorneys' fees; and

(viii) **$625.00** in costs.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

        **SO ORDERED:**

        *Peggy Kuo*
        PEGGY KUO
        United States Magistrate Judge

Dated: Brooklyn, New York
    August 17, 2017